# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHAD A. DAFFERN** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 10-1817** |
| | * | |
| **CHERAMIE MARINE, LLC** | * | **SECTION "L"(4)** |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. No. 12) filed by

Defendant Cheramie Marine, LLC. The Court has reviewed the submitted memoranda as well as

the applicable law and is ready to rule. For the following reasons, the motion is denied.

## I. BACKGROUND AND PRESENT MOTION

This case arises out of injuries allegedly sustained by Plaintiff Chad Daffern on October

9, 2009. In his Complaint, Plaintiff avers that on that day, he was employed as a seaman by

Defendant onboard the M/V MISS MARY, a utility vessel owned and operated by Defendant.

Plaintiff alleges that amid severe weather and rough sea conditions in the Gulf of Mexico, he

was ordered to go from the deck of the vessel to the wheelhouse. According to Plaintiff, as he

was climbing the stairway connecting the deck and the wheelhouse, he was suddenly thrown

from the stairway, causing him to fall to the deck and to sustain severe injuries. Plaintiff asserts

that his injuries were caused by the negligence of Defendant and by the unseaworthiness of the

M/V MISS MARY. Through this action, Plaintiff seeks to recover damages under the Jones Act

and general maritime law.[1]

---

[1] In his Complaint, Plaintiff also asserted his right to maintenance and cure and sought, to
the extent that Defendant had willfully denied maintenance and cure, punitive damages and
attorney's fees. The parties have reached a settlement with respect to that cause of action, and the

Defendant has filed the present Motion for Summary Judgment (Rec. Doc. No. 12), arguing that both the Jones Act and the unseaworthiness claims fail as a matter of law. In support of that contention, Defendant draws attention to several statements made by Plaintiff during his deposition, which indicate that Plaintiff has difficulty remembering certain details regarding his fall from the stairway. For instance, Plaintiff stated that he could not remember whether he had "three point contact" at the time of the incident. Defendant contends that as a consequence, there is insufficient evidence of liability in this case.

Plaintiff opposes the motion. With respect to Jones Act negligence, Plaintiff notes that there is evidence that the acting first captain of the M/V MISS MARY and the second captain of the vessel knew that the rough sea conditions rendered it unsafe for the vessel to remain in the area, but that a decision was made not to move the vessel to shore or to shallow waters. With respect to the vessel's alleged unseaworthiness, Plaintiff notes that there is evidence that the stairway lacked sufficient non-skid surfacing. Plaintiff further argues that the finder of fact can reasonably infer that Plaintiff fell from the stairway as a result of the sea conditions and of the insufficient non-skid surfacing. Accordingly, Plaintiff asserts that there is a genuine issue of fact that precludes summary judgment at this juncture.

## II. LAW AND ANALYSIS

### A. Standard of Review

A district court can grant a motion for summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the

_____

Court has dismissed it without prejudice.

district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B. Jones Act Claim**

Under the Jones Act, an employer has the duty to "provide his seaman employees with a reasonably safe place to work." *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F. Supp. 2d 471, 475 (E.D. La. 2008) (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989)). An employer breaches that duty if it does not act with ordinary prudence and is thereby negligent. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338, 339 (5th Cir. 1997) (en banc). In other words, an employer breaches its duty if it disregards a danger that it "'knew or should have known.'" *Colburn*, 883 F.2d at 374 (quoting *Turner v. Inland Tugs Co.*, 689 F.

Supp. 612, 619 (E.D. La. 1988)). Under the Jones Act, the negligence of an employee is imputed

to the employer. *See Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991) (noting that this

leads to "a broad basis for liability"); *see also De Zon v. Am. President Lines, Ltd.*, 318 U.S. 660,

664-65 (1943).

      In addition to negligence, a plaintiff seeking relief under the Jones Act must show

causation. "[A] seaman is entitled to recovery under the Jones Act if his employer's negligence

is the cause, in whole or in part, of his injury." *Gautreaux*, 107 F.3d at 335. The Fifth Circuit has

observed that this is a "liberal causation requirement," *Brister*, 946 F.2d at 354, one that places a

"'featherweight'" burden on the plaintiff, *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th

Cir. 1975) (quoting Grant Gilmore & Charles Black, The Law of Admiralty § 6-36 (1957)).

Indeed, "[i]f the defendant's negligence played any part, however small, in producing the

seaman's injury, it results in liability." *Brister*, 946 F.2d at 354; *accord Chisholm v. Sabine

Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982) ("Defendant must bear

responsibility if his negligence played any part, even the slightest, in producing the injury.").

      Like an employer, a seaman is "obligated under the Jones Act to act with ordinary

prudence." *Gautreaux*, 107 F.3d at 339. But a seaman's "contributory negligence does not bar

recovery" under the Act. *Gavagan v. United States*, 955 F.2d 1016, 1019 (5th Cir. 1992).

Instead, it is "an affirmative defense that diminishes recovery in proportion to the seaman's

fault." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008). Because a seaman's

"contributory negligence is [thus] not a complete defense," *Lafont v. Otto Candies, Inc.*, 369

F.2d 38, 40 (5th Cir. 1966), an employer moving for summary judgment on a Jones Act claim

cannot prevail by merely asserting that the seaman contributed to his own injuries. *E.g.*,

*Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 903 (6th Cir. 2006) (noting that a seaman's "own negligence does not provide an adequate basis on which to grant summary judgment" to the employer); *cf. Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 540 (3d Cir.1994) (noting that if "*some* fault" could be attributed to a vessel owner, then "that would suffice to preclude summary judgment" with respect to a claim brought by a longshore worker (emphasis in original)). Rather, the employer must show that there is no genuine issue of material fact with respect to its own alleged negligence.

In its motion, Defendant asserts that it is entitled to judgment as a matter of law with respect to Plaintiff's Jones Act claim because Plaintiff indicated during his deposition that he has trouble remembering how he fell and other details of the incident. For instance, Plaintiff appears unable to recall how many steps he had climbed before he fell and whether he had "three point contact" as he was ascending the stairway. Def.'s Ex. 1 at 13, 15-16 (Rec. Doc. No. 12-2). To have "three point contact" is to have both feet and at least one hand grounded. *Id.* at 15. In response to Defendant's motion, however, Plaintiff has adduced sufficient evidence to show that there is a genuine issue of fact as to whether Defendant was negligent and whether that negligence caused Plaintiff's injuries. Accordingly, summary judgment at this juncture would be inappropriate.

There is evidence that on the morning of October 9, 2009, Capt. Garon Alario, who was the second captain of the M/V MISS MARY and who was on duty at the time, found that the seas were roughly 10 or 11 feet and that he informed Defendant's home office that it was dangerous for the vessel to remain at its location. Pl.'s Ex. 3 at 22-24, 25 (Rec. Doc. No. 15-3). Capt. Alario testified in his deposition that he was told by the home office to keep the vessel out

in the field. *Id.* at 23, 25-26. Capt. Alario also testified that he told Capt. Brad Stabler, who was the first captain of the M/V MISS MARY at the time, that the sea conditions were too rough and that the vessel should be moved. *Id.* at 42. According to Capt. Alario, Capt. Stabler initially agreed with his assessment, but after making a call, advised him that they could not leave the field. *Id.* Capt. Alario testified that at that time, he told Capt. Stabler that if he were first captain, he would be bringing the boat in. *Id.* In his deposition, Capt. Stabler indicated that as the captain on duty at the time, Capt. Alario had the authority to move the vessel if he deemed conditions to be unsafe. Pl.'s Ex. 4 at 42 (Rec. Doc. No. 15-4).

There is also evidence that around the time of the incident, the sea and weather conditions either remained the same or even worsened: the seas were approximately 9 to 12 feet, it was raining, and the winds were approximately 30 to 35 knots. *E.g.*, Pl.'s Ex. 2 at 55 (Rec. Doc. No. 15-2); Pl.'s Ex. 3 at 27 (Rec. Doc. No. 15-3); Pl.'s Ex. 4 at 53 (Rec. Doc. No. 15-4). There is evidence that in those conditions, the M/V MISS MARY was rolling and pitching severely. *E.g.*, Pl.'s Ex. 1 at 89 (Rec. Doc. No. 15-1); Pl.'s Ex. 3 at 35 (Rec. Doc. No. 15-3). Capt. Stabler testified that after Plaintiff helped tie off the vessel to a platform, Capt. Stabler, who was on the stern controls, ordered Plaintiff to go inside the vessel. Pl.'s Ex. 4 at 58, 59 (Rec. Doc. No. 15-4). At his deposition, Plaintiff indicated that he understood that order to mean that he was to go to the wheelhouse to see if Capt. Stabler would need anything to be done from there. Pl.'s Ex. 1 at 20, 22 (Rec. Doc. No. 15-1).

According to Plaintiff, the stairwell connecting the deck to the wheelhouse was wet. *Id.* at 17, 24. He grabbed the handrail, shut the door at the bottom of the stairway, and made his way up. *Id.* at 13, 64-65. Plaintiff recalls that he was high enough on the stairway that he was able to

see Capt. Alario at the chart table in the wheelhouse, but that his next recollection is that of him regaining consciousness on the deck. *Id.* at 16, 24-25, 64-67, 89. Capt. Alario testified that he had heard a loud bang, and as he came down the stairway, he saw Plaintiff lying on the floor. Pl.'s Ex. 3 at 31-32 (Rec. Doc. No. 15-3). Capt. Alario also testified that the door at the bottom of the stairway was damaged. *Id.* at 33.

When viewed in the light most favorable to Plaintiff, this evidence can support the finding that Defendant was negligent and that its negligence contributed to Plaintiff's injuries. Negligence can be found in the decision to keep the vessel out in the field despite the rough sea conditions and despite the understanding that those sea conditions made it unsafe for the M/V MISS MARY to remain at its location. And the jury could reasonably conclude that this decision, in tandem with Capt. Stabler's order to Plaintiff to go to inside the vessel, played a part in causing Plaintiff to fall from the stairway. To be sure, to the extent that Defendant can show that Plaintiff did not have "three point contact" right before he fell, the jury could also find that Plaintiff was contributorily negligent. But as indicated above, contributory negligence does not completely bar recovery under the Jones Act. Under these circumstances, it is clear that Defendant's motion for summary judgment with respect to Plaintiff's Jones Act claim must be denied.

In support of its motion, Defendant suggests that the facts of this case are analogous to those in *Clark v. Icicle Seafoods, Inc.*, No. C06-25Z, 2007 WL 3474266 (W.D. Wash. 2007). The facts in *Clark* are so different, however, that this argument cannot be deemed to have any force. In *Clark*, the plaintiff was working onboard a 265-foot seafood processing barge, and he alleged that he was injured when he fell down and a cart that is used to transport processed

seafood rolled over his foot. *Id.* at *1, *2. The plaintiff could not explain why he fell down, and there was no evidence showing that the employer did anything to contribute to his fall by, for instance, keeping the vessel out in rough sea conditions, or that the employer was otherwise negligent. *See id.* at *2-*4, *7. Here, in contrast, Plaintiff has adduced sufficient evidence for a reasonable jury to conclude that the decision not to move the M/V MISS MARY to shore or to shallow waters was negligent and that this decision played some part in causing Plaintiff to fall from the stairway. Defendant's attempt to find any significance in *Clark* is thus unpersuasive.

## C. Unseaworthiness Claim

"To establish a claim of unseaworthiness, 'the injured seaman must prove that the [vessel] owner has failed to provide a vessel . . . which is reasonably fit and safe for the purposes for which it is to be used.'" *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). "A vessel's condition of unseaworthiness might arise from any number of circumstances." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). For instance, "[h]er gear might be defective, her appurtenances in disrepair, her crew unfit." *Id.* (footnotes omitted). The absence of sufficient non-skid surfacing on steep stairways has been found to render vessels unseaworthy. *See, e.g.*, *Levine v. Zapata Protein (USA), Inc.*, 961 F. Supp. 942, 945 (E.D. La. 1996); *Courville v. Cardinal Wireline Specialists, Inc.*, 775 F. Supp. 929, 936 (W.D. La. 1991).

A plaintiff raising a claim of unseaworthiness "must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Jackson*, 245 F.3d at 527. In particular, "the plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a

direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988). As under the Jones Act, a seaman's contributory negligence in the context of an unseaworthiness claim only bars recovery "for the damages sustained as a result of his own fault." *Miles v. Melrose*, 882 F.2d 976, 984 (5th Cir. 1989); *see also Comeaux v. T.L. James & Co., Inc.*, 666 F.2d 294, 299 (5th Cir. 1982). Accordingly, a vessel owner cannot prevail on a motion for summary judgment on the sole ground that the seaman was contributorily negligent.

In its motion, Defendant contends that Plaintiff "cannot provide any evidence of an unseaworthy condition aboard the M/V MISS MARY on the date of his accident." Defendant focuses on the fact that during his deposition, Plaintiff indicated that he could not blame "any condition" on the vessel "that may have caused or contributed to [his] accident." Def.'s Ex. 1 at 83 (Rec. Doc. No. 12-2). In response to Defendant's motion, however, Plaintiff has proffered sufficient evidence to indicate that there is a genuine issue of fact regarding the vessel's alleged unseaworthiness. Indeed, photographs of the stairway show that the stairway may have been steeper than 50 degrees and that the adhesive non-skid strips did not cover the entire width of each step. Pl.'s Ex. 5 at 25, 30 (Rec. Doc. No. 15-5). Capt. Mitchell Stoller, whom Plaintiff intends to call as an expert witness, has expressed in his preliminary expert report the opinion that the stairway did not have sufficient non-skid surfacing and that had this condition not existed, the risk of injury would have been substantially lower. *Id.* at 29.

When viewed in the light most favorable to Plaintiff, this evidence can support the finding that the stairway was unsafe, that this condition rendered the vessel unseaworthy, and that the absence of sufficient non-skid surfacing played a substantial part in causing Plaintiff to

fall from the stairway. *See Levine*, 961 F. Supp. at 945; *Courville*, 775 F. Supp. at 936. To be sure, to the extent that Defendant can show that Plaintiff did not have "three point contact" at the time he was ascending the stairway, the finder of fact could also conclude that Plaintiff was contributorily negligent. As noted above, however, a seaman's contributory negligence does not completely foreclose recovery with respect to a claim of unseaworthiness. Accordingly, Defendant cannot prevail on its motion by merely asserting that Plaintiff in this case may have been at fault as well. Because Plaintiff has adduced sufficient evidence to show that there is a genuine issue of fact as to his claim of unseaworthiness, Defendant's motion in this respect must also be denied.

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 12) is hereby **DENIED**.

New Orleans, Louisiana, this 1st day of February, 2011.

_____

UNITED STATES DISTRICT JUDGE